NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALINA P., | ) |
| | ) Supreme Court No. S-18702 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-21-00533 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF FAMILY & CHILDREN'S | ) |
| SERVICES, OFFICE OF | ) No. 2006 – January 24, 2024 |
| CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Michael L. Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Carney, Borghesan, and Henderson, Justices. [Maassen, Chief Justice, and Pate, Justice, not participating.]

## I. INTRODUCTION

Alina's son Kendrick was taken into emergency custody by the Office of Children's Services (OCS) shortly after his birth.[1] He tested positive for several

---

\* Entered under Alaska Appellate Rule 214.

[1] We use pseudonyms to protect the family's privacy.

controlled substances and was experiencing symptoms of opiate withdrawal. OCS later petitioned to terminate Alina's parental rights. After trial the superior court terminated Alina's parental rights. Alina appeals, arguing that OCS failed to make reasonable efforts to reunify her with Kendrick. We affirm the termination order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Kendrick was born to Alina P. and Donald A. in December 2021. His parents were living with Alina's grandmother, Vera, and had done so throughout Alina's pregnancy. Donald had committed domestic violence against both Alina and Vera.[2] In June 2021 Vera obtained a domestic violence protective order (DVPO) against Donald after he assaulted her. The order required him to stay 500 feet away from Vera's home where Alina was also still living. In August Donald violated the DVPO and an arrest warrant was issued, but the DVPO was dissolved in November at Vera's request. Donald was arrested on the warrant in December and released on conditions, including that he not go near Vera's home. Donald nonetheless moved back into Vera's home.

When Alina arrived to the hospital in labor in December, she reported that bruising on her body was from Donald. She told hospital staff that Donald had assaulted her "at least three times" while she was pregnant and that he "puts his hands" on her when he "blacks out."

When Kendrick was born, he experienced symptoms of opiate withdrawal and his umbilical cord tested positive for opiates, amphetamines, and cannabinoids. Alina told a hospital social worker that she used heroin daily during her pregnancy. Hospital staff provided her information for drug treatment, including a suboxone program.

---

[2]     Trial evidence also included allegations that Donald had committed domestic violence against his brother, mother, and a former girlfriend.

Hospital staff reported their concerns about substance abuse and domestic violence to OCS. An OCS caseworker spoke with Alina at the hospital three days after Kendrick's birth. The caseworker discussed OCS's concerns about ongoing substance abuse and domestic violence. The caseworker explained that it would therefore be "really hard" to create a safety plan so that Kendrick could go home with Alina. The caseworker later testified that a safety plan "cannot be put in place unless [OCS] can fully manage child safety in the home." OCS asked Alina about family members who could care for Kendrick, and Kendrick was placed with Alina's uncle and aunt.[3]

OCS took emergency custody of Kendrick when he was 5 days old. In its petition OCS cited Alina's ongoing use of heroin, Donald's history of domestic violence, and Vera's allowing Donald back into the home as the basis for emergency custody.

The superior court held a hearing on the emergency petition the next day and entered "provisional" findings that Kendrick was in need of aid due to Alina's domestic violence and substance use in the family home.[4] Alina did not attend the hearing. At a continued hearing in January the court entered probable cause findings. Alina again did not attend the hearing. The caseworker scheduled a visit for Kendrick and his parents that both parents attended. Alina did attend a status hearing in February and was appointed counsel.

A second caseworker replaced the initial one in February. Two visits were cancelled due to weather before another was scheduled in late February. Alina did not attend the visit; she later told OCS she had become sick on the way and could not call because she lost her cell phone in the car. Alina and Donald both attended a visit in March.

---

[3]    Kendrick has remained with his uncle and aunt since.

[4]    AS 47.10.011(8) and (10), respectively.

After being unable to contact Alina, the second caseworker met her in person when Alina came to the OCS building for the March visit. The caseworker confirmed that Alina's contact information was correct. But the caseworker later testified that visitation "just kind of stopped" after March 2022 and that Alina stopped responding to the OCS worker coordinating check-ins for visits. The caseworker was unable to reach Alina again until July, despite making calls and sending emails "every couple weeks, every month."

OCS also scheduled a case planning meeting in March 2022, but Alina did not attend, so the caseworker prepared a case plan for Alina without her and sent the plan to Alina's attorney. The case plan required Alina to: (1) obtain an integrated substance abuse and mental health assessment and follow the assessor's recommendations; (2) participate in weekly urinalysis; (3) take parenting, healthy relationship, and domestic violence classes; and (4) maintain contact with Kendrick and develop a familial bond with him.

Alina did not meet with the second caseworker about her case plan, and the caseworker later testified that, to her knowledge, Alina had not engaged in services to address OCS's safety concerns during that time period. The caseworker stated that Alina visited OCS monthly between February and August 2022 to pick up bus passes but did not speak to anyone regarding Kendrick's case.

A third caseworker took over in September 2022 and remained assigned to the case through the time of trial. At that time neither parent was in contact with OCS, and neither had visited Kendrick since March. During the first hearing that the caseworker attended, the court told Alina to remain on the phone to speak with the caseworker after the hearing. But Alina did not. The caseworker then tried to reach Alina by phone and through other family members without success. The caseworker also searched OCS records and state databases for Alina's contact information.

In November OCS filed a permanency report recommending that Kendrick's permanency goal be changed from reunification to adoption. The report

noted that neither parent had made progress on case plans or behavioral changes and that neither had visited Kendrick since March 2022. The next day OCS filed a petition to terminate Alina's and Donald's parental rights.[5] The petition described OCS's difficulty contacting the parents, their lack of engagement with case plans, and OCS's efforts towards the parents.

Alina was incarcerated from mid-December to early February. There is no evidence that OCS arranged any visits or referred her to any services that were available while she was incarcerated.

In January the caseworker prepared updated case plans without either parent's participation. The caseworker later testified that when she updated Alina's case plan, she had no reason to believe Alina had engaged in any of the needed services. The caseworker reached Alina in February through Vera and scheduled a case planning meeting. But Alina did not show up, so the caseworker again updated the case plan herself. The caseworker scheduled a visit with Kendrick for both parents in March 2023, but Alina did not attend, even though she had confirmed the date and time.

### B.     Proceedings

A two-day termination trial was held in March 2023. OCS called four witnesses: the three caseworkers and Kendrick's foster mother. Donald called a staff member from the rehabilitation facility where he was staying and testified on his own behalf.[6] Alina testified on her own behalf.

The first caseworker testified that setting up a safety plan with Alina instead of removing Kendrick was not possible because OCS could not "safely manage a child['s] safety if . . . someone is actively using heroin or methamphetamine." The caseworker also noted her concern about domestic violence because "[t]he grandmother

---

[5]     *See* AS 47.10.088.

[6]     The testimony of the foster mother, Donald's clinician, and Donald is not relevant to Alina's appeal.

. . . filed a restraining order and then dropped it. So, that is someone that is not being protective . . . . [Vera] was allowing [Donald] to live there." The caseworker went on to explain that a safety plan would have required ensuring that Donald was not in the home and Alina would need to provide consistent negative drug tests "before we would even look at doing an in-home safety plan. Everything combined was too dangerous to do an in-home safety plan for a newborn."

The second and third caseworkers testified about their efforts to contact and make a case plan with the parents. The third caseworker testified that because "there was no indication that [Alina] . . . had started anything on her case plan," the case plan was not changed. She also testified that Alina told her that she had other personal legal matters she had been addressing instead. The caseworker also testified that she had not known Alina was incarcerated from December 2022 to February 2023.

Alina testified last. She testified that the first caseworker never discussed safety planning with her in the hospital after Kendrick was born. Alina testified that her lack of contact with OCS was because she had "a lot of other legal things going on with my other cases and stuff and I was trying to resolve that plus my living situation, and you know, just my mental health was not all there." And she acknowledged on cross examination that she knew throughout the case how to contact OCS.

The superior court terminated Alina and Donald's parental rights. The court found by clear and convincing evidence that Kendrick was in need of aid on two statutory bases: substance abuse[7] and abandonment.[8] It found by a preponderance of

---

[7] AS 47.10.011(10) (providing that court may make child in need of aid finding if parent's ability to parent "has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child").

[8] AS 47.10.011(1) allows a court to find a child to be in need of aid if a parent "has abandoned the child as described in AS 47.10.013." In relevant part,

the evidence that termination of parental rights was in Kendrick's best interests. Finally, the court found by clear and convincing evidence that Alina and Donald had not remedied the conduct or conditions placing Kendrick at a substantial risk of harm, and that OCS made "timely, reasonable efforts to provide family support services to the child and to the parents to enable the safe return of the child to the family home," as required by AS 47.10.086.

The court enumerated the efforts OCS made. It found that throughout the case OCS had "tried to meet with [Alina], updated the case plans, provided bus passes, and arranged family visits." It also found OCS had arranged for Kendrick to see medical providers on a weekly basis, conducted home visits, and arranged for an "out-of-town" caseworker to be assigned to the case. It concluded OCS's efforts, considered in their entirety, had been reasonable but unsuccessful.

Alina appeals arguing that OCS failed to make reasonable efforts to reunify her with Kendrick.

## III.   STANDARDS OF REVIEW

"Whether OCS made reasonable reunification efforts toward a family is a mixed question of law and fact."[9]  "We review factual questions under the clearly erroneous standard and legal questions using our independent judgment."[10]  "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable

---

AS 47.10.013 provides that the court may make a child in need of aid finding if a "parent or guardian has shown a conscious disregard of parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision, considering the child's age and need for care by an adult."

[9]     *Jimmy E. v. State, Dep't of Health & Soc. Servs.*, *Off. of Child.'s Servs.*, 529 P.3d 504, 513 (Alaska 2023).

[10]     *Id.*

to the prevailing party below leaves us with a definite and firm conviction that a mistake has been made."[11]

## IV. DISCUSSION

Alina argues that OCS failed to make reasonable efforts because it made no efforts during the two months she was in jail. She also argues that the failure to make a safety plan for Kendrick to go home with her from the hospital was a failure to make reasonable efforts.

Alina argues that OCS had notice that she was incarcerated after a hearing in which the court stated on the record that Alina was at a local jail. She further argues OCS acknowledged at a later hearing that it had "actual knowledge" of her incarceration when OCS's attorney reported to the court that "we were able to serve [Alina] while she was [in the jail]." She argues that OCS's failure to work with her during the two months[12] she was incarcerated was unreasonable and that OCS's efforts overall were therefore not reasonable.

Alina also contends that OCS did not make reasonable efforts because it did not attempt to set up an in-home safety plan before taking custody of Kendrick. She argues that because she had begun suboxone treatment for her addiction after Kendrick was born, was sober in the hospital, and behaved appropriately with him in the hospital, OCS's "failure to even attempt to" establish a safety plan to keep Kendrick with Alina was "another inexcusable wasted opportunity."

OCS acknowledges that it did not contact Alina or refer her to any services while she was incarcerated. And it asserts that its decision to remove Kendrick from

---

[11]     *Id.* (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 310 P.3d 943, 949 (Alaska 2013)).

[12]     Alina characterizes the length of her incarceration as three months in her brief. But she testified that she was in jail from December 12 to February 2, making her stay under two months long.

Alina rather than attempt to establish a safety plan was not a failure of reasonable efforts, but an action taken in his best interests.

We consider OCS's reunification efforts "in their entirety," and we consider a parent's cooperation with OCS when we determine whether OCS made reasonable efforts to reunify a family.[13] OCS's efforts must be reasonable, "but need not be perfect,"[14] and the scope of its efforts are "affected by a parent's incarceration."[15]

The record provides ample support for the superior court's finding that OCS made reasonable efforts. OCS caseworkers repeatedly attempted to contact Alina with little success. They prepared three case plans for Alina, each of which directed Alina to services to address her substance abuse and mental health, to help her develop a healthy relationship with Kendrick and recognize his needs, and to understand the impact of domestic violence on herself and on Kendrick. OCS also provided Alina with bus passes to ensure she had transportation to service providers and visitation. Alina picked up the bus passes at OCS during business hours but did not ask to see Kendrick or speak with the assigned caseworker.

The evidence also supports the court's finding that Alina had not "engaged in her OCS case plan." The initial case plan was created without Alina's input because OCS was unable to contact her. The second caseworker testified that her only contact with Alina was in court and that she did not believe Alina engaged in any of the services on her case plan.

The final caseworker also had difficulty contacting Alina, including when Alina left at the end of a virtual court hearing, despite the court's instruction that she

---

**13** *Jimmy E.*, 529 P.3d at 522; *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1262 (Alaska 2010).

**14** *Jimmy E.*, 529 P.3d at 522 (quoting *Casey K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 311 P.3d 637, 646 (Alaska 2013)).

**15** *Barbara P.*, 234 P.3d at 1262.

remain on the line to speak to the caseworker. Alina conceded at trial that she had OCS's contact information, despite stating that she "didn't know who to reach out to or how to communicate." And testimony indicated that Alina had not visited her son since early 2022.

Alina was incarcerated for approximately two months of the fifteen that OCS's case was open. Although OCS admitted it did not make any efforts toward Alina during those two months, it made consistent and reasonable efforts over the remaining thirteen. OCS referred her to substance abuse treatment and domestic violence services to address the issues that made Kendrick in need of aid. There is no evidence that Alina engaged in any of the services listed on her case plan. We have repeatedly held that a "brief lapse in OCS's provision of services does not foreclose a finding that OCS made reasonable efforts toward reunification."[16] The two months in which OCS did not provide services to Alina does not make OCS's efforts over the entire case less than reasonable. OCS's efforts in this case were reasonable when viewed in their entirety.

OCS's decision to take custody of Kendrick rather than attempt a safety plan to allow Alina to take him home also does not detract from OCS's reasonable efforts. OCS received a report from hospital staff that Alina had abused drugs throughout her pregnancy and had recently been the victim of domestic violence from Donald. Hospital staff also reported that Kendrick had been born with a number of drugs in his umbilical cord. "What efforts to pursue and what timing is reasonable is

---

[16] *Casey K.*, 311 P.3d at 645; *see also Jon S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 212 P.3d 756, 765 (Alaska 2009) (holding that OCS met more stringent "active efforts" standard even where OCS's efforts temporarily declined while parent was incarcerated); *Audrey H. v. State, Off. of Child.'s Servs.*, 188 P.3d 668, 679–81 (Alaska 2008) (holding that although OCS's efforts were limited during eight- to nine-month period preceding termination proceedings, lapse did not render its efforts unreasonable "[w]hen considered in the context of the full history of its involvement with [the parent]").

within OCS's discretion."[17]  And "the primary consideration" driving OCS's decisions "is the child's best interests."[18]

Alina's argument that beginning suboxone treatment and remaining sober in the days after Kendrick's birth, even when considered along with her appropriate behavior with Kendrick in the hospital, is not enough to overcome OCS's concerns about substance abuse and domestic violence in Alina's home.  The superior court credited the evidence presented about ongoing substance use and domestic violence. We see no clear error in the superior court's conclusion that Kendrick's removal under these circumstances was in his best interests; OCS's decision not to attempt a safety plan was prudent, not a failure to make reasonable efforts.  The superior court did not err when it determined that OCS had made reasonable, but unsuccessful, efforts to reunify Alina and Kendrick.

## V.    CONCLUSION

We AFFIRM the termination of Alina's parental rights.

---

[17]    *Jimmy E.*, 529 P.3d at 522.

[18]    AS 47.10.086(f).